**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **SHIRE LLC, et al.,** | : | |
| | : | **TO BE FILED UNDER SEAL** |
| **Plaintiffs,** | : | Civil Action No. 2:11-cv-03781 (SRC)(CLW) |
| | : | (CONSOLIDATED) |
| **v.** | : | |
| | : | **OPINION** |
| **AMNEAL PHARMACEUTICALS, LLC,** | : | |
| **et al.,** | : | |
| **Defendant.** | : | |
| | : | |
| _____ | : | |

CATHY L. WALDOR, United States Magistrate Judge.

## I.      Introduction

Pending before the Court is an informal application by Defendants Johnson Matthey Inc. and Johnson Matthey Pharmaceutical Materials (collectively "Defendants") to compel Plaintiffs Shire LLC and Shire Development LLC (collectively "Shire") to return or destroy privileged documents produced after August 1, 2013. (Docket Entry No. 389, ("Letter Request")). Defendants further request that the Court rule there has been no waiver of attorney-client privilege or work product protection by virtue of the document production discussed below. (Id.). Plaintiff cross-moves to compel Defendants to produce the 25 Exhibit A documents ("Exhibit A documents") as well as other withheld documents concerning Defendants' analyses of the patents-in-suit. (Docket Entry No. 399, ("Letter Response")).

Shire opposes the requests contending that Defendants intentionally waived the privilege by selectively producing self-serving documents analyzing the patents-in-suit. (Letter Response at 1).  The Court has reviewed the letters in favor of and in opposition to the applications and

considered the arguments raised by the parties. For the reasons set forth below Defendants'

applications are hereby **DENIED**. Plaintiff's applications are **GRANTED** in part.

## II.    Background & Procedural History

Recognizing the breadth of confidential and commercially sensitive information likely to

be involved in discovery, the parties executed a Discovery Confidentiality Order on March 5,

2012. (Docket Entry No. 65, ("the DCO")). Relevant to the current issue brought before the

Court is Paragraph 15 of the DCO. Paragraph 15 instructs the parties that an inadvertent

production of privileged material "shall not constitute a waiver" if the producing party promptly

notifies the receiving party and requests the return or destruction of the subject material. (Id. at

12).

Prior to August 1, 2013, Defendants made eight productions of documents. During this

time, Defendants and Shire filed a joint letter addressing Shire's request to compel the

production of documents from Defendants' third-party customers or potential customers.

(Docket Entry No. 240). Defendants ceased production during the pendency of that motion.

On July 25, 2013 Defendants discovered archived emails from a prior email client

previously overlooked in discovery. (Docket Entry No. 414-7 at ¶ 4, ("Decl. of Douglas

Nemec")). On August 1, 2013 this Court ordered Defendants to produce the third-party

documents that were the subject of Shire's request to compel. At this time Defendants informed

the Court of the existence of the newly discovered emails and that Defendants were in the

process of reviewing them for production. The Court responded by extending fact discovery until

September 20, 2013. Following the conference the parties agreed that Defendants would produce

the documents by August 20, 2013 in order to avoid a disruption of the discovery schedule. (Id.

at ¶ 5). Defendants produced a total of 249,483 documents on August 9, August 12, August 16, and August 20, 2013. (Id. at ¶ 6).

On August 23, 2013 Shire alerted Defendants that the production appeared to contain documents subject to the attorney-client privilege. On that same day, Defendants contacted Shire acknowledging the inadvertent production and requested that Shire return or destroy the privileged material. (Docket Entry No. 389-2). Shire agreed to hold the documents in a secure fashion. (Letter Request at 2, fn. 1). Defendants conducted an investigation that uncovered two errors in the production process. (Decl. of Douglas Nemec at ¶ 7). Defendants remedial search efforts subsequently identified inadvertently produced documents.

In a letter dated September 19, 2013 Defendants brought this matter to the Court's attention asserting Shire's argument that Paragraph 15 of the DCO was inapplicable. (Letter Request at 1). Shire replied contending Defendants were not entitled to the return or destruction of the documents because they waived the privilege. (Letter Response; Docket Entry No. 401).

## II. Discussion

### A. Parties' Arguments

#### a. Defendants' Arguments in Support of the Motion

Defendants contend their inadvertent production does not constitute waiver and that their letter to Shire dated August 23, 2013 comports with the "clawback" procedure pursuant to Paragraph 15 of the DCO. (Letter Request; Docket Entry No. 389-2). They argue their compliance with Paragraph 15 overrides any contention that privilege was waived. (Letter Request at 2). Additionally Defendants contend that even in the absence of the DCO their screening practices comport with the applicable analysis courts in this District apply to determine whether or not a party has waived privilege under these circumstances. (Id.).

Much of the controversy involves documents related to Defendant's in-house counsel William Youngblood ("Youngblood"). Defendants argue that mere inclusion of an attorney on a document does not automatically make the document privileged. These documents were intentionally produced because they were not privileged so their production cannot be construed as a waiver. (Letter Request at 2.)

Additionally, Defendants argue: 1) the inadvertent production accounts for only 25 of the 249,483 documents[1] produced within 20 days; 2) there was no delay between the point at which Defendants were aware of the disclosure and their issuance of a clawback letter; and 3) justice requires the Court to uphold Defendants' privilege. (Letter Request at 4-5).

Defendants also argue that Shire mischaracterizes the scope of the inadvertent production. (Docket Entry No. 414 at 1). Defendants did not selectively produce documents and facts do not support a broad waiver of subject matter.

### b. Shire's Arguments in Opposition to the Motion

Shire argues that Defendants intentionally waived the privilege by producing self-serving documents outlining internal analysis of the patents-in-suit. (Letter Response at 4). Defendants' "selective" production is unfair it cannot use the privilege as both a sword and a shield, therefore Defendants should produce all related privileged materials. (Id. at 3-4).

Shire also contends that Defendants have also waived privilege on subject matter concerning Defendants' analyses of the patents-in-suit. (Id.). Finally, Shire argues that

---

[1] The number of documents at issue is actually 47. Defendants' Letter Request indicates only 25 privileged documents were inadvertently produced within the entire production. That same letter indicates the scope of production consisted of either 249,483 or 310,144 pages. (Letter Request at 2, 4). Shire's Letter Response indicated 26 inadvertently produced documents. (Letter Response at 9). Defendants' subsequent letter inflated the total number of privileged documents to 47. (Docket Entry No. 414 at 2; Nemec Decl. at ¶8). Defendants later indicated that 47 privileged documents were inadvertently produced. This larger number is the sum of the 25 documents discussed in the Letter Request and Letter Response and the 22 documents identified in Defendants' second clawback letter. (Docket Entry No. 414 at 5, fn. 6).

Defendants waived any privilege they could have asserted by failing to take reasonable precautions to prevent inadvertent disclosure. (Id. at 6).

### B. Analysis

#### a. The DCO

Paragraph 15 of the DCO provides in pertinent part that:

> Furnishing of documents (including physical objects) to a receiving party; using documents in depositions, pleading or any written discovery; or disclosing documents to the Court shall not constitute a waiver of the attorney-client privilege, work product immunity or other immunity from discovery, with respect to any document or physical object so furnished, provided that the producing party shall immediately upon discovery of the inadvertent production notify the receiving party in writing and request such documents or material be returned or destroyed. Such notification by the producing party shall constitute reasonable precautions to prevent disclosure and reasonably prompt measures to rectify the inadvertent production within the meaning of Fed.R.Evid. 502(b)(3).

As a threshold matter, the Court finds that the parties have met and conferred in good faith. Paragraph 15 also provides that "If the parties disagree about the disposition of such material after conferring in good faith, then either side may move the Court for a resolution of the dispute." The issue is properly before the Court for consideration as prescribed by Paragraph 15. Defendants contend that they are entitled to the clawback protection of Paragraph 15. For the reasons discussed below the Court disagrees.

The timeline of events cuts against Defendants' argument. Here, the receiving party, Shire, discovered the inadvertent production and notified Defendants. (Decl. of Douglas Nemec at ¶ 7; Letter Request at 2). Only after Shire's discovery and notification did Defendants conduct a remedial investigation.[2] The post-notification investigation prompted Defendants' letter to

---

[2] Defendants discovered that a privilege word search applied to newly discovered emails did not identify certain privileged material and that third-party vendor The MCS Group, Inc. turned over documents that were not marked for production. (Letter Request at 2).

Shire requesting the return or destruction of the inadvertently produced privileged material. (Letter Request at 1).

Paragraph 15 of the DCO is very specific in that there is no waiver if the producing party discovers the inadvertent production of privileged material and immediately notifies the receiving party. A literal interpretation of the DCO deems that in order to raise the clawback protection Defendants seek they bear the burden of the initial discovery of the violation.

### b. Reasonableness

Pursuant to Fed.R.Evid. 502(b) the inadvertent disclosure of privileged information "does not operate as a waiver" if:

> 1) the disclosure is inadvertent;
> 2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> 3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Inadvertent production of privileged documents "is a specter that haunts every document intensive case." Ciba-Geigy Corporation v. Sandoz Ltd, 916 F. Supp. 404, 410 (D.N.J. 1995) (quoting Federal Deposit Ins. Co. v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 479-80 (D.C. Va. 1991)). In this District, the question of inadvertent disclosure is resolved by an examination into the "reasonableness of the steps taken to preserve the confidentiality of the privileged documents. Ciba-Geigy, 916 F. Supp. at 411. This approach recognizes a waiver of privilege by an unintentional act if a disclosure is the result of inexcusable neglect. Id. at 12.

Courts consider the following five factors to resolve the issue of waiver by inadvertent disclosure: 1) the reasonableness of the precautions taken to prevent the inadvertent disclosure in view of the extent of the document production; 2) the number of inadvertent disclosures; 3) the extent of the disclosure; 4) any delay and measures taken to rectify the disclosure; and 5)

whether the overriding interests of justice would or would not be served by relieving the party of this error. Id. (quoting Advanced Medical, Inc. v. Arden Medical Sys., Inc. 1998 U.S. Dist. LEXIS 7297 at 2).

"[E]very inadvertent disclosure is an unintentional disclosure." Ciba-Geigy, 916 F. Supp. at 412. Therefore establishing mere inadvertency does not end the inquiry. Id. The analysis focuses on whether Defendants "undertook reasonable precautions to avoid inadvertent disclosure of privileged information. Id. For the reasons discussed below the Court finds that Defendants have not met that burden.

Defendants contend they took reasonable precautions to prevent inadvertent disclosure and cite the use of analytical software employing targeted search terms and that their employment of such technology constitutes reasonable precautions. (Letter Request at 3). Defendants further submit that all documents underwent a layered review process and the inadvertent disclosure was the result of a mistake in the Bates process. (Id.) Finally, Defendants argue that the mere presence of Youngblood's name on a large portion of documents produced does not constitute a waiver because those documents were already identified for production and therefore not privileged.

Documents produced to Shire prior to August 1, 2013 were subjected to a layered review process. (Decl. of Douglas Nemec at ¶ 2). This process involved attorneys and third-party vendors, The MCS Group, Inc. ("MCS") and EvalueServe. (Id.) MCS collected documents pursuant to Shire's document requests. (Id.). The collection underwent a privilege review by Defendants' in-house and outside counsel before undergoing a final review by EvalueServe. (Id.).

However there is no indication that the documents produced after August 1, 2013 underwent the same review process. (Id. at ¶ 6). Defendants indicated that the post-August 1 production underwent an "expedited review." (Id.) Defendants electronically searched the documents with targeted search terms that were purportedly written by attorneys. (Id.). Documents flagged by this search were subsequently "reviewed individually for privilege." (Id.).

The Exhibit A documents were produced after August 1, 2013 and consequently subject to Defendants' "expedited review" and not the pre-August 1 layered review process. These processes are different in that the post-August 1 review did not involve attorneys in the review process. Nemec's Declaration fails to mention who individually reviewed documents identified by the privilege word search. This is a particularly glaring omission considering both in-house and outside attorneys participated in the review process for the pre-August 1 document productions. Defendants do not assert that counsel was involved in the review process after August 1; nor is it asserted that Youngblood participated in the final review of the production even though his name was on a large portion of the documents.

Turning to the use of analytical software, the volume of documents to be produced and the time within which they were to be produced. The Advisory Committee Notes to Fed.R.Evid. 502(b) indicate that "Depending on the circumstances, a party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken 'reasonable steps' to prevent inadvertent disclosure." In this case the Court finds that the use of analytical software without attorney review does not constitute reasonable steps to prevent inadvertent disclosure.

Similarly the Court is not persuaded by Defendants' arguments on volume and time. This litigation involves experienced and sophisticated parties on both sides who are well-equipped to

handle document review. Furthermore, Defendants' time constraints were self-imposed as fact discovery was set to close on September 20, 2013. In sum, Defendants had nearly two months to conduct a thorough document review. Based on the foregoing the Court finds that Defendants failed to establish that they undertook reasonable precautions to prevent the inadvertent disclosure of the documents at issue.

Not all of the remaining factors cut against Defendants' position. The proportionate share of inadvertently produced privileged documents relative to the overall production is small. In total there are 47 inadvertently produced documents within a document production of 249,483 pages. In light of the proportionately small size of the inadvertent production the Court finds that this factor does not weigh in favor of finding waiver.

The third factor directs the Court to consider the extent of the disclosure. The Court finds this factor to weigh in favor of a finding of waiver as Shire has demonstrated that these documents contain Defendants' internal analysis of the patents-in-suit.

The fourth factor considers Defendants' effort to rectify the error. As previously discussed Defendants did not conduct a remedial investigation until after Shire brought the issue to their attention. Those facts in conjunction with Defendants' previously discussed deficient screening procedures supports a finding that this factor weighs in favor of waiver.

In weighing the fifth factor the Court must consider "whether the interests of justice would be served by a finding of waiver." Ciba-Geigy, 916 F. Supp. at 414. Shire argues that these documents contain Defendants' admission of willful infringement on Shire's valid patents. However the relevancy of the documents to the ultimate issue of the case is not part of this analysis. Id. (citing Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co., 133 F.R.D. 171, 174 (D. Kan. 1989)). But in light of the fact that this inadvertent disclosure was

the result of a failure to review, as previously discussed, the Court finds that justice is served by a finding of waiver in this instance.

### c. Subject Matter Waiver

When a disclosure waives privilege or work-product protection, that waiver will extend to undisclosed documents or communication if: 1) the waiver is intentional; 2) the disclosed and undisclosed communications or information concern the same subject matter; and 3) they ought in fairness be considered together. Fed.R.Evid. 502(a).

In this District, a subject matter waiver is found "when the privilege-holder has attempted to use the privilege as both a 'sword' and 'a shield' or when the party attacking the privilege will be prejudiced at trial." Koch Materials Company v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 120 (D.N.J. 2002).

Shire argues that evidence before this Court demonstrates that Defendants withheld documentation of their willful infringement of Shire's patents and that the privileged documents produced indicate a pattern of unfair selective disclosure (Letter Response at 1). Shire contends this point is bolstered by the fact that the documents originate from Youngblood's files. (Id.). The gist of this argument rests on the assumption that Defendants cherry-picked certain privileged documents to disclose to Shire in an attempt to unfairly bolster their position. (Id. at 2).

The position taken by Shire requires evidence of Defendants' intent to gain an unfair advantage through intentional disclosure of privileged material – the sword and shield analogy. To this point, Shire submits that Defendants' selective disclosure of numerous documents from Youngblood's files is evidence of intent. (Id. at 4). Additionally, Shire argues that this Court

should find the requisite intent in the absence of adequate privilege screening protocols. (Id. at 5). These arguments are not persuasive.

Defendants contend that there is no selective disclosure of privileged documents because they produced non-privileged documents. (Docket Entry No. 414 at 3). The 47 privileged documents were produced inadvertently. (Id.). The production of non-privileged documents bearing "Youngblood's" name is not evidence of selective production.

Finally, the documents that Shire relies upon as illustrative of a conspiracy were clawed back prior to the advancement of the selective production argument.

This Court has already found that Defendants unintentionally produced privileged documents to Shire. The basis for that decision was Defendants' inexcusable neglect in the review process. It follows that the Court cannot find that Defendants waived subject matter privilege when that privilege must be intentionally waived.

## IV. Conclusion

For the reasons set forth above, the undersigned hereby **DENIES** Defendants' applications. Shire's motion to compel production of the Exhibit A documents is hereby **GRANTED.** Shire's motion to compel production of Defendants' analyses of the subject-matter is hereby **DENIED**.

An appropriate order shall follow.


s/ Cathy L. Waldor
**CATHY L. WALDOR**
**UNITED STATES MAGISTRATE JUDGE**


Dated: Friday January 10, 2014